STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          Location:  Portland
                                        Docket No.:  BCD-CV-14-63 ✓

ADVENIO, INC.,                          )
                                        )
                    Plaintiff           )
                                        )
        v.                              )
                                        )   ORDER ON DEFENDANT'S
MARINER SOFTWARE, INC.,                 )   MOTION TO DISMISS
                                        )
                    Defendant           )

Defendant Mariner Software, Inc. ("Mariner") has filed a Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(1) and 12(b)(3) for lack of subject matter jurisdiction and improper venue.  Mariner contends that the claims asserted by Plaintiff Advenio, Inc. ["Advenio"] arise under an Asset Purchase Agreement between the parties, and that the mandatory and exclusive forum selection clause in that Agreement compels Advenio to bring its claims in the courts of Hennepin County, Minnesota.

Advenio contends that the forum selection clause that in fact governs this case is found in the Security Agreement that was entered into between the parties at the time they entered into the Asset Purchase Agreement.  The forum selection clause contained in the Security Agreement permits disputes to be litigated in the State of Maine.

In a telephonic conference regarding the initial Case Management Conference, Mariner's Motion to Dismiss was discussed and the parties agreed to waive further oral argument.

For the reasons stated below, the court agrees with Mariner's position on improper venue, and grants the Motion to Dismiss.

1

## Factual Background

Advenio is a Delaware corporation with its place of business in Lewiston, Maine. Advenio is in the business of developing computer software programs. (Complaint ["Compl."] ¶ 11.) Specifically, Advenio is known for its creation of the software programs "MacGourmet," "MacGourmet Delux," and "MacGourmet Touch" (collectively "MacGourmet"). (Compl. ¶ 12.) Mariner is a Minnesota corporation with a place of business in Minneapolis, Minnesota.

On or about May 31, 2013, Advenio and Mariner entered into an Asset Purchase Agreement ("Asset Purchase Agreement") under which Mariner agreed to purchase MacGourmet for $376,267.74. (Compl. ¶ 13.) Under the terms of the Asset Purchase Agreement, Advenio warranted that MacGourmet, as well as other assets transferred, were "adequate and suitable for the purposes for which they are used in the current operations" of MacGourmet.[1] (Compl. ¶ 14.) At the time the subject assets were transferred, Version 3.3 of MacGourmet was undergoing beta testing, but had not yet been publicly released.[2] (Compl. ¶ 17.) Because Version 3.3 was in beta testing at the time of the asset transaction, it was not the version being used by end users.[3] (Compl. ¶ 19.)

Pursuant to the Asset Purchase Agreement, Mariner executed and delivered to Advenio a promissory note (the "Note").[4] (Compl. ¶ 22.) The Note calls for Mariner to

---

[1] At the time the assets were transferred, only Version 3.2.6 of the software had been released.
[2] Beta testing involves releasing a version of the software to a limited number of users so that the developer can determine whether there are any faults, or "bugs," in the software. (Compl. ¶ 19.)
[3] Section 6.2(b) of the Asset Purchase Agreement indicated that Advenio would provide "up to five (5) complimentary hours of development for critical help for one (1) year AFTER the public announcement of the MacGourmet acquisition and subsequent Version 3.3 release." (Compl. ¶ 20.)
[4] The Note, like the Asset Purchase Agreement, was dated May 31, 2013. (Compl. ¶ 23.)

2

pay the asset purchase price to Advenio in monthly payments of $8,000.[5] The payments were to commence one month from the date of the Note. On the fourth anniversary of the date of the Note, any unpaid principal balance would become due and payable in full.[6] (Compl. ¶ 24.) Under the terms of the Note, events of default included:

i.      failure to make any payment within 30 days of the date when such payment was due, and

ii.      Mariner defaulting "under the terms of any agreement or documents evidencing any security" for the Note.

(Compl. ¶ 27.) In the event of default and Mariner's failure to cure within fifteen (15) days, Advenio had the right to accelerate the maturity of the Note. *Id.*

The Asset Purchase Agreement contains a forum selection clause at Section 8.2 of the Agreement that calls for "[a]ny and all legal proceedings pertaining to, arising under or in connection with [the] Agreement [to] be conducted exclusively . . . in the State of Minnesota, County of Hennepin."

In another provision of the Asset Purchase Agreement, Mariner also agreed to grant Advenio a security interest in the subject assets as well as other assets owned by Mariner, by executing and delivering to Advenio a document titled Security Agreement. (Compl. ¶ 29.) The Security Agreement secured Mariner's obligations under the Note and the Asset Purchase Agreement. (Compl. ¶ 30.) Under the terms of the Security Agreement, the failure of Mariner to pay or perform any of its obligations under the Asset Purchase Agreement would constitute an event of default under the Security Agreement. (Compl. ¶ 33.) The forum selection clause in the Security Agreement provides that claims arising under the Security Agreement "may" be litigated in Maine.[7]

---

[5] The Note was annexed to the Asset Purchase Agreement and incorporated therein by reference.

[6] Interest was to accrue on the Note at a rate of one percent per year.

[7] The forum selection clause in the Security Agreement reads in relevant part:

3

Mariner had possession and use of MacGourmet for almost four months prior to making a payment due under the Note. Thereafter, only five payments were made. (Compl. ¶ 37.) On February 21, 2014, Mariner contacted Advenio via email to inform Advenio that it would not be making any further payments under the Note. (Compl. ¶ 38.) Mariner claimed that Advenio made material misrepresentations regarding MacGourment based on the assertion that there were bugs in Versions 3.3 and 4.0.

Advenio contends that Mariner's assertions are without merit, and fail to provide a basis for withholding payment under the Note. (Compl. ¶ 40.) Advenio further contends that Mariner was aware that when it acquired MacGourmet, Version 3.3 of the program was undergoing beta testing. Advenio argues that the fact the software was in beta testing should have made clear to Mariner that there could have been bugs. (Compl. ¶ 42.) Thus, when Mariner acquired the program, Mariner had no basis to believe that the program was free of bugs. Advenio contends that it never made such a representation. (Compl. ¶ 44.) Further, Advenio argues that since Mariner had taken over the beta testing, Advenio cannot be held responsible for any bugs in Version 4.0 as Mariner developed 4.0 on its own. (Compl. ¶ 45.)

On March 14, 2014, Advenio notified Mariner that Mariner was in default of its obligations under the Note, and that failure to cure within fifteen (15) days would result in acceleration of the maturity of the Note. (Compl. ¶ 51.) Mariner never cured and

The Debtor agrees that any action or claim arising out or, any dispute in connection with, the Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof, may be brought in the courts of the State or any federal court sitting therein and consents to the non-exclusive jurisdiction of such court. The Debtor hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court.

4

continues to refuse to make payment under the Note. (Compl. ¶ 52). Advenio seeks payment of all sums due under the note plus interest and attorney's fees.

<u>Discussion</u>

1. *Applicable Law Regarding Conflicting Forum Selection Clauses*

Maine's Law Court has not had occasion to rule on the proper procedure for seeking dismissal of an action based on an agreement's choice-of-forum clause. However, the Superior Court has found persuasive the majority rule of federal courts that "favor a motion to dismiss for improper venue, pursuant to M.R. Civ. P. 12(b)(3)."[8] *Bee Load Ltd. v. BBC Worldwide LTD*, 2006 WL 2587982, at *3 (Me. Super. May 15, 2006).

"Forum selection clauses 'are *prima facie* valid,' and should be enforced unless they are the product of fraud or overreaching or unless enforcement would be unreasonable or unfair or would contravene a strong public policy of the forum." *Nelson v. CGU Ins. Co. of Can.*, 2003 U.S. Dist. LEXIS 5924, at *5-*6 (Me. Apr. 10, 2003) (internal citations omitted). A party who challenges a forum selection clause as unreasonable, unjust, or unfair must establish "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *HLC Fin. Inc. v. Dave Gould Ford Lincoln Mercury, Inc.*, 2003 WL 22250378 (Me. Super. Ct., Sept. 24, 2003) *citing Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

---

[8] The text of FRCP 12(b)(3) is the same as the text of M.R. Civ. P. 12(b)(3).

5

Here, the forum selection clause in the Asset Purchase Agreement mandates a venue different than that permitted by the forum selection clause in the Security Agreement.

Conflicting forum selection clauses set forth in different documents that are part of one transaction are to be read together. *Kandlis v. Huotari*, 678 A.2d 41,43 (Me. 1996) (instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together, since they are one contract or instrument). *See also Rosenthal v. Means*, 388 A.2d 113, 115 (Me. 1978) (all writings that form part of or pertain to the same transaction should be read together); *Alden v. Camden Anchor-Rockland Mach. Co.*, 107 Me. 508, 510, 78 A. 977 (1911) ("[d]ifferent instruments are to be construed together as parts of the same contract where necessary to carry into effect the agreement and intention of the parties.").

It is undisputed that the Asset Purchase Agreement and the Security Agreement were executed by the parties at the same time. The Security Agreement secured the financing for the acquisition contemplated by the Asset Purchase Agreement. Further, the Security Agreement was attached to and incorporated by reference into the Asset Purchase Agreement. Thus, the Asset Purchase Agreement and the Security Agreement must be read together, as functionally one instrument, to decipher the intent of the parties. *See Kandlis v. Huotari*, 678 A.2d 41,43 (Me. 1996).

Reading the Asset Purchase Agreement and the Security Agreement together creates what could be deemed an ambiguity in the parties' contractual undertaking, given the inconsistent venues specified by the two forum selection clauses. However, during a discussion regarding the motion, counsel for the parties disclaimed any

6

knowledge as to why the two forum selection clauses are inconsistent, and neither party has proffered any extrinsic evidence to explain the inconsistency between the two clauses. Thus, if the inconsistency creates an ambiguity in the parties' contractual undertaking manifested in the two Agreements read together, neither party has proffered any extrinsic evidence to help resolve it, and the inconsistency must be resolved within the corners of the parties' written Agreements.

While Maine courts "ordinarily review a motion to dismiss by examining the complaint in a light most favorable to Advenio and accepting the material facts of the complaint as true," when the motion to dismiss challenges jurisdiction, the court "do[es] not make any favorable inferences in favor of [Advenio]." *Davric ME. Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 6, 751 A.2d 1024.

### 2. The Forum Selection Clauses in Both the Asset Purchase Agreement and the Subsequent Security Agreement are Valid and Enforceable

Forum selection clauses are *prima facie* valid and should be enforced unless they are the product of fraud or overreaching or unless enforcement would be unreasonable or unfair or would contravene a strong public policy. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). In this case Advenio and Mariner signed an Asset Purchase Agreement in which the forum selection clause unequivocally stated that Advenio consented to the exclusive jurisdiction and venue of the courts of Hennepin County, Minnesota. This forum selection clause was the result of a freely negotiated commercial transaction between two experienced companies. Nothing in the phrasing of the forum selection clause in the Asset Purchase Agreement, or in the circumstances by which the clause became part of the parties' overall agreement, calls into doubt the validity and enforceability of the clause.

7

In a similar fashion, the parties freely negotiated and entered into the Security Agreement, which contained a permissive forum selection clause indicating that claims arising under the Security Agreement may be litigated in the State of Maine. For the same reason mentioned above, the court finds that the forum selection clause found in the Security Agreement is also valid and enforceable. Given that both clauses are valid and at least potentially enforceable, the court must determine which of the conflicting clauses governs in the circumstances of this case.

### 3. The Controlling Forum Selection Clause is That Contained in the Asset Purchase Agreement

For three independently sufficient reasons, the court concludes that the controlling forum selection clause is that contained in the Asset Purchase Agreement.

First, the gravamen of Advenio's claims in this case is under the Asset Purchase Agreement. Count I of Advenio's two-count Complaint alleges breach of Mariner's obligations under the Note, and it is the Asset Purchase Agreement that defines the obligations memorialized in the Note. Although Count II presents a claim for default under the Security Agreement, on its face, the alleged default is dependent on the breach alleged in Count I. It is the Asset Purchase Agreement that creates and defines the parties' respective obligations regarding the assets purchased by Mariner and payment to Advenio for the assets. The Security Agreement, true to its title, functions mainly to secure Mariner's performance of its obligations.

Second, the merger provision at section 8.9 of the Asset Purchase Agreement makes it plain that, as between that Agreement and any prior or contemporaneous other agreements between the parties (such as the Security Agreement), those other agreements are merged into the Asset Purchase Agreement. In effect, this provision

8

reflects the parties' intent to have the provisions of the Asset Purchase Agreement trump any conflicting provisions in other agreements between the parties.

Third, the forum selection clause at Section 8.2 of the Asset Purchase Agreement is unquestionably mandatory, whereas the forum selection clause at issue in the Security Agreement is permissive. The difference between them is the difference between "must" and "may." Were this the sole basis for giving precedence to the forum selection clause in the Asset Purchase Agreement, the inquiry would need to proceed further, but the mandatory versus permissive distinction between the two provisions is a factor that, along with the fact that Advenio's cause of action is grounded mainly in the Asset Purchase Agreement, supports the view that the clause in that Agreement controls.

Advenio cites Minnesota case law for the notion that when a plaintiff initiates a suit that includes some claims that are either not covered by a forum selection clause, or that are properly authorized by one forum selection clause, in a majority of cases, federal courts will not transfer the case on the grounds that a conflicting forum selection clause may govern other claims in the Complaint.[9] (Pl.s' Mot. 9.) (citing *Capsource Fin. Inc. v. Moore*, 2012 WL 249935, *4 (D. Minn. 2012).

---

[9] Advenio also cites *Duff v. Innovative Discovery LLC.*, for the proposition that a mandatory forum selection clause should not be enforced when one of the parties' agreements included a permissive forum selection clause that permitted the parties to bring certain claims in another state. 2012 WL 6096586 (Del. Ch. 2012). However, the court in *Duff* found the "mandatory provision" at question in the case to be ambiguous and therefore refused to interpret the provision as "mandatory." The court noted: Moreover, "[i]f the contractual language is not crystalline, 'a court will not interpret a forum selection clause to indicate the parties intended to make jurisdiction exclusive.'" *Id.* at 11. Section 8.2 of the Asset Purchase Agreement is unquestionably "crystalline" in its exclusivity.

However, Maine courts look to the plain language of the instruments read together as an integrated whole. In this case the plain language shows that the parties intended for disputes arising under the Asset Purchase Agreement to be litigated in Hennepin County, Minnesota. The fact that an asserted violation of the Asset Purchase Agreement may also constitute an event of default under the cross-default provisions of the Security Agreement is not a sufficient ground on which to ignore the forum selection clause in the parties' primary agreement.

This conclusion does not mean that the permissive provision of the Security Agreement has no applicability or meaning. Claims and causes of action that arise primarily under the Security Agreement—meaning a claim that asserts a breach of an obligation established by the Security Agreement rather than an obligation established by the Asset Purchase Agreement—could, at either party's option, be litigated in Maine. Count II of the Complaint purports to arise under the Security Agreement, but on its face liability on Count II is predicated on the cross-default provision in the Security Agreement, and depends on proof of a breach of the Note that reflects Mariner's obligation to pay set forth in the Asset Purchase Agreement. Thus, Count II does not assert a claim for breach of an obligation created by, and thus arising primarily under, the Security Agreement.

For the reasons stated, the court concludes that the intent of the parties was that any claims arising under the Asset Purchase Agreement would be litigated exclusively in Minnesota, even if the alleged breaches of that Agreement happen also to be breaches the Security Agreement.

The inquiry now turns to whether enforcing the forum selection clause in the Asset Purchase Agreement would be unfair or unreasonable.

10

*4. Enforcement of the Asset Purchase Agreement is not Unfair or Unreasonable to Advenio*

To overcome an otherwise valid forum selection clause, Advenio has the burden of demonstrating that Section 8.2 is unreasonable, unjust, or unfair. Further, Advenio must establish "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *HLC Fin. Inc. v. Dave Gould Ford Lincoln Mercury, Inc.*, 2003 WL 22250378, at *1 (Me. Super. Ct., Sept. 24, 2003) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

Advenio contends that enforcing the forum selection clause in the Asset Purchase Agreement would be unreasonable as Count II may be heard in Maine. Advenio argues that dismissing the claim now would force Advenio to litigate Count I in Minnesota and Count II in Maine. However, for reasons mentioned above, the court disagrees: Count II is dependent on Count I, not independent of it.

In this case there has been no allegation or fraud or overreaching made by Advenio. Rather, the parties uniformly agree that there was mutual assent to all terms of the Asset Purchase Agreement. Any inconvenience Advenio might suffer by being forced to litigate in Minnesota was foreseeable at the time the parties entered into the contract. *See Dave Gould Ford Lincoln Mercury, Inc.*, 2003 WL 22250378, at *2.

Moreover, it is important to note that neither party has recommended that the court split the case in half by sending Count I of the Complaint, for breach of the Note, to Minnesota and leaving Count II, for default under the Security Agreement, here, presumably stayed until the Minnesota litigation is finally resolved. Although Advenio has suggested that this might be the unpalatable result if the court enforces the forum

selection clause of the Asset Purchase Agreement, Advenio has not asked the court to keep Count II if Count I must be litigated in Minnesota. In any event, because Count II is on its face dependent on Count I, which plainly arises under the Asset Purchase Agreement, Count II should follow Count I.

Conclusion

IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

1. Defendant Mariner's Motion to Dismiss is granted on grounds of improper venue.

2. The Complaint and this case are hereby dismissed.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated March 20, 2015

A. M. Horton, Justice
Business & Consumer Court

**Advenio, Inc. v. Mariner Software, Inc.**
**BCD-CV-14-63**


**Advenio, Inc.**
    **Plaintiff**

        Counsel:                      Theodore Small, Esq.
                                    75 Park Street
                                    PO Box 891
                                    Lewiston, ME 04243-0891


**Mariner Software, Inc.**
    **Defendant**

        Counsel:                      Michael Hodgins, Esq.
                                    146 Capitol Street
                                    PO Box 5057
                                    Augusta, ME 04332-5057